UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL TRAMEL,

        Petitioner,

v.                                  Case No. 3:19-cv-1071-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Michael Tramel, a former inmate of the Florida penal system,[1] initiated this action on September 11, 2019, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Tramel challenges a 2013 state court (Duval County, Florida) judgment of conviction for attempted second-degree murder and aggravated battery with a deadly weapon. He raises ten grounds for relief. See Petition at 6-30. Respondents submitted a memorandum in opposition to the Petition. See

---

[1] Tramel began a one-year term of probation on October 26, 2021, that will terminate on October 25, 2022. See Offender Search, Florida Department of Corrections, (last updated May 15, 2022).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Response (Doc. 7). They also submitted exhibits. <u>See</u> Docs. 7-1 through 7-24. Tramel filed a brief in reply. <u>See</u> Reply (Doc. 12). This action is ripe for review.[3]

## II. Relevant Procedural History

On January 17, 2013, the State of Florida charged Tramel by amended information with attempted first-degree murder (count one) and aggravated battery with a deadly weapon (count two). Doc. 7-1 at 57. On March 14, 2013, a jury found Tramel guilty of attempted second-degree murder, a lesser included offense, and aggravated battery with a deadly weapon. <u>Id.</u> at 158-60. On April 25, 2013, the trial court sentenced Tramel to concurrent eleven-year terms of imprisonment followed by one-year terms on probation for counts one and two. <u>Id.</u> at 169-75.

On direct appeal, Tramel, through counsel, filed an initial brief, arguing that the trial court: (1) fundamentally erred when it gave conflicting jury instructions on the duty to retreat; (2) fundamentally erred when it failed to instruct the jury that the justifiable use of deadly force was a defense to attempted second-degree murder; (3) erred when it denied the defense's motion

---

[3] Because Tramel is on supervised release, on April 25, 2022, the Court ordered Tramel to file a motion to voluntarily dismiss if he no longer intended to pursue some or all of the ten grounds for relief raised in his Petition. <u>See</u> Doc. 23. On May 9, 2022, Tramel filed a document entitled "Motion of Intent to Continue Pursuing Case," requesting the Court rule on the merits of his Petition and "reverse" his convictions and sentences. <u>See</u> Doc. 24.

for judgment of acquittal as to count two; and (4) fundamentally erred when it failed to instruct the jury that the justifiable use of nondeadly force was a defense to aggravated battery. Doc. 7-4. The State filed an answer brief. Doc. 7-5. On May 12, 2015, the First DCA affirmed Tramel's conviction and sentence for count two but reversed and remanded his conviction and sentence for count one. Doc. 7-6 at 3. Relying on Floyd v. State, 151 So. 3d 452 (Fla. 1st DCA 2014), decision quashed, 186 So. 3d 1013 (Fla. 2016), the First DCA determined that the trial court fundamentally erred when it gave conflicting jury instructions on the duty to retreat. Doc. 7-6 at 7-8. Tramel filed a motion for rehearing, and on August 14, 2015, the First DCA issued a revised opinion reversing Tramel's convictions and sentences for both counts one and two because Tramel raised self-defense as his sole defense to both counts. Doc. 7-7 at 8.

The State invoked the discretionary jurisdiction of the Florida Supreme Court, Doc. 7-8, and the First DCA stayed issuance of a mandate, Doc. 7-9 at 4. On June 24, 2016, the Florida Supreme Court granted the State's Petition for review, quashed the First DCA's decision, and remanded the case for reconsideration upon application of the court's decision in Floyd v. State, 186

3

So. 3d 1013 (Fla. 2016).[4] <u>State v. Tramel</u>, No. SC15-1597, 2016 WL 3459512, at *1 (Fla. June 24, 2016). On February 16, 2017, the First DCA per curiam affirmed Tramel's convictions and sentences without prejudice to his right to seek postconviction relief, Doc. 7-12, and the court denied his motion for rehearing, Doc. 7-11 at 5. Subsequently, on May 15, 2017, the First DCA issued the mandate. <u>See</u> onlinedocketsdca.flcourts.org, <u>Michael Tramel v. State of Florida</u>, 1D13-2285 (Fla. 1st DCA).

On May 18, 2017, Tramel filed a pro se state petition for writ of habeas corpus, raising five grounds of ineffective assistance of appellate counsel. Doc. 7-14 at 2-26. The First DCA denied the petition on the merits on November 9, 2017. Doc. 7-17.

On April 9, 2018, Tramel filed a pro se second amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.[5] Doc. 7-22 at 135-63. In his second amended Rule 3.850 Motion, Tramel raised ten grounds for relief. <u>See generally</u> <u>id.</u> He alleged counsel was ineffective when he

---

[4] On March 10, 2016, the Florida Supreme Court quashed the First DCA's decision in <u>Floyd</u> and remanded for further proceedings, determining the standard instructions on the duty to retreat correctly stated the law and were not "confusing, misleading, or contradictory with regard to the duty to retreat where there is a question of fact as to who was the initial aggressor." <u>Floyd</u>, 186 So. 3d at 1023.

[5] Tramel filed his initial Rule 3.850 Motion on December 1, 2017. Doc. 7-22 at 5-33. The circuit court twice ordered Tramel to amend his Rule 3.850 Motion. <u>Id.</u> at 60-61, 129-30.

4

failed to: object to "governmental misconduct" and discharge Tramel (ground one); challenge the violation of Tramel's right to a speedy trial (ground two); object to the denial of the defense's motion to dismiss (ground three); present a sufficient motion for judgment of acquittal (ground five); investigate and impeach witnesses, as well as suppress evidence (ground six); object to the amended information (ground seven); ensure Tramel had a representative jury (ground eight); request and object to jury instructions (ground nine); and object to Tramel's conviction for a lesser included offense (ground ten). Id. at 136-62. Tramel also alleged entitlement to relief based on changes to Stand Your Ground[6] in 2017 (ground four). Id. at 149-50. On May 4, 2018, the circuit court summarily denied relief on all grounds. Id. at 206-14. The First DCA per curiam affirmed the denial of relief without a written opinion on March 7, 2019, Doc. 7-24 at 3, and issued the mandate on April 4, 2019, id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

---

[6] Fla. Stat. §§ 776.012, 776.032 (2017).

5

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Tramel's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v.

6

Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523

8

(plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[7] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential

review under § 2254(d) generally is limited to the record that was before the

---

[7] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

9

state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

11

court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In ground one, Tramel alleges numerous "structural and otherwise fundamental errors made by the government and appointed counsel" violated his rights to due process and equal protection. Petition at 11. Tramel raised a substantially similar claim in state court as ground one of his second amended Rule 3.850 Motion. Doc. 7-22 at 136-40. In denying relief, the circuit court noted Tramel's claims were "varied and intermingled and very hard to decipher and delineate," so it "attempt[ed] to address them globally." Id. at 207. The circuit court explained in pertinent part:

> Defendant alleges counsel was ineffective for failing to object to governmental misconduct. Included in this

13

claim is his objection to his bond; to his not being charged timely; to the courts allowing perjured testimony; to the sufficiency of the evidence; to his failure to have twelve jurors and to the state misrepresenting facts in closing.

Initially, the Court notes [c]laims of trial court error are not cognizable in a rule 3.850 motion. State v. Coney, 845 So. 2d 120, 137 (Fla. 2003); Johnson v. State, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008); Swanson v. State, 984 So. 2d 629, 629 (Fla. 1st DCA 2008). Further, a defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking post conviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); see Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) ("claims of insufficient evidence have long been held to be procedurally barred in collateral proceedings"). A defendant must raise these matters on direct appeal. Hoppert v. State, 68 So. 3d 382, 382 (Fla. 2d DCA 2011). Defendant's claims all include language as to insufficient evidence a claim properly raised on direct appeal. Defendant's claim is not cognizable under rule 3.850, and is, therefore, procedurally barred.

The Defendant's motion details that his discussion with his counsel reflects that counsel felt it was a better strategy to not use the "N" word. He now takes issue with that advice and that strategy decision because another witness used the "N" word.

As to other points raised in this claim, the record reflects that at all times pertinent counsel filed the appropriate motion to address these issues. Specifically, the Defendant's [m]otion for new trial reflects that counsel objected to and raised many of the

issues the Defendant raises now. That motion was denied by the court.

As to the merits of the claim regarding the prosecutor's comments, the proper method for reviewing the effect and prejudice of the prosecutor's comments is to place them in context. <u>Rose v. State</u>, 985 So. 2d 500, 508 (Fla. 2008); <u>Ham v. State</u>, 580 So. 2d 868, 868 (Fla. 1991). . . .

. . . .

In the instant case, counsel did object in closing and was overruled. Further, that issue as well as any <u>Giglio</u> claim was raised in the Motion for New Trial as well as was objected to during the trial.

At some point in the Defendant's Motion, he argues with the admittance of a knife that was in a casket. To the extent that he is making an argument as to trial court error, that is not cognizable in the instant Motion. To the extent he is making an argument as to ineffective counsel, the records show[] counsel objected to this line of testimony but was overruled.

<u>Id.</u> at 208-10 (record citations omitted) (emphasis in original). The First DCA per curiam affirmed the state circuit court's denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for

---

[8] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

15

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Tramel's claim does not have merit. If Tramel asserts the various alleged errors deprived him of a fair trial, the Court finds, after a review of the record, they did not render his trial fundamentally unfair. Moreover, to the extent Tramel argues that the cumulative impact of his trial counsel's errors prejudiced him at trial, his claim is due to be denied. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). As the Court explains below, each of Tramel's individual claims lack merit. Therefore, his claim of cumulative error fails, and relief on the claim in ground one is due to be denied. See Tejada v. Dugger, 941 F.2d 1551, 1559

(11th Cir. 1991) (noting vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

## B. Ground Two

In ground two, Tramel contends counsel was ineffective when he failed to challenge the violation of Tramel's right to a speedy trial. Petition at 10-11. According to Tramel, the trial court initially scheduled trial to begin on December 10, 2012, approximately 172 days after his June 22nd arrest. Id. at 11. However, he claims his counsel at that time, Assistant Public Defender Matthew Lufrano, was "unnecessarily 'reassigned'/removed" from his case. Id. Successor counsel, Assistant Public Defender Tomislov Golik, received Tramel's case on December 10th and requested a continuance of trial based on his lack of familiarity with the case and his need to conduct additional depositions. Id. Tramel argues this continuance prejudiced him because the State subsequently filed an amended information on January 17, 2013, charging him with an additional count, attempted first-degree murder. Id. at 12. Tramel avers he had several witnesses available to testify on his behalf on December 10, 2012, and, in his view, the defense would have prevailed at trial. Id. He also asserts that successor counsel filed a notice of expiration of trial.

17

Id. at 11. However, the trial court did not hold a hearing within five days,[9] which divested it of jurisdiction. Id.

Tramel raised a similar claim in state court as ground two of his second amended Rule 3.850 Motion. Doc. 7-22 at 141-44. In denying relief, the circuit court explained in pertinent part:

> Defendant alleges counsel was ineffective for violating his speedy trial rights. It is clear from the record and his motion that counsel was not prepared for the trial of this magnitude within the speedy trial time. Counsel filed a Notice of Expiration[;] however, as counsel needed more time to depose all the witnesses[,] the trial could not be held within the speedy trial time and counsel was forced to move for a continuance. In fact, despite counsel not having been able to depose some state witnesses, the Defendant wanted to proceed to trial.

Id. at 210 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication

---

[9] Tramel presumably refers to Florida Rule of Criminal Procedure 3.191(p)(3) which provides, "[n]o later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice. . . ."

of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Tramel's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. On December 7, 2012, successor counsel moved for a continuance of the December 10th trial because he received supplemental discovery from the State on November 30th, and he needed to review the discovery and prepare for its use at trial. Doc. 7-1 at 53. Counsel also noted that the parties had not completed depositions. Id. Notably, the supplemental discovery from the State included records of Tramel's telephone calls from the Duval County Jail, including "statements...placing himself at scene of offense, arming himself, admitting use of knife on victim, [and] various attempts to persuade/coerce individuals/witnesses to provide statements favorable to [Tramel]." Id. at 51. In a subsequent pretrial hearing, successor counsel further explained:

> MR. GOLIK: Your Honor, at the time that – it
> was December 10th that I made a motion for a

> continuance. It was based on my having just received the case file and not being ready to go forward with trial. My client did not authorize me to waive his speedy trial rights. I explained to him that I simply could not go forward unprepared and that I would be ineffective. At that time the continuance was granted.

Id. at 197.

Based on the above, the Court finds counsel did not perform deficiently when he moved for a continuance and waived Tramel's right to a speedy trial. See State v. Riechmann, 777 So. 2d 342, 365 (Fla. 2000) (noting defendant waived his right to a speedy trial by taking a continuance); State v. Abrams, 350 So. 2d 1104, 1105 (Fla. 4th DCA 1977) ("The principle is well established that the right to a speedy trial is waived when the defendant or his attorney request a continuance."). Pursuant to Florida law, counsel had the authority to move for a continuance over Tramel's objection. See McKenzie v. State, 153 So. 3d 867, 875 (Fla. 2014) (as revised on rehearing). It was also not unreasonable for counsel to take such an action given the significance of the November 30th discovery and his recent appointment to the case at that time.

The continuance of trial also did not prejudice Tramel. Such a delay allowed counsel to file a motion to dismiss pursuant to Stand Your Ground on January 23, 2013. Doc. 7-1 at 60-62. Further, Tramel only speculates the State

would not have been prepared to proceed with a trial on December 10th. Habeas relief cannot be based on speculation. See <u>Tejada</u>, 941 F.2d at 1559; <u>Fayson v. Sec'y, Fla. Dep't of Corr.</u>, 568 F. App'x 771, 773-74 (11th Cir. 2014)[10] (finding petitioner could not demonstrate prejudice where "he merely speculate[d] that, had counsel not waived his speedy trial right, the state would have been unable to procure key witnesses for trial").

Insofar as Tramel argues the trial court erred because it failed to comply with Florida Rule of Criminal Procedure 3.191(p)(3), he presents a state law claim that is not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of Tramel's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991). Thus, to the extent Tramel

---

[10] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

claims the trial court erred under Florida law, such claim provides no basis for federal habeas relief. See Estelle, 502 U.S. at 67-68; Allen v. Dep't of Corr., 288 F. App'x 643, 645 (11th Cir. 2008) (noting where petitioner claimed he was not brought to trial within the required time frame under Florida law, he stated "at best only a state law speedy trial claim"). Accordingly, Tramel is not entitled to federal habeas relief on ground two.

## C. Ground Three

In ground three, Tramel argues counsel was ineffective when he failed to seek a writ of prohibition based on the denial of the defense's motion to dismiss pursuant to Stand Your Ground. Petition at 13. He asserts that competent, substantial evidence did not support the trial court's ruling, and the trial court used "an incorrect subjective standard of review." Id.

Tramel raised a substantially similar claim in state court as ground three of his second amended Rule 3.850 Motion. Doc. 7-22 at 144-49. In denying relief, the circuit court reasoned:

> Defendant asserts that trial counsel was ineffective for failing to challenge the trial court's denial of the Motion to Dismiss based on "Stand Your Ground" statute. The Defendant's own motion rebuts his entitlement to relief on this ground. The Defendant did by all accounts not want to extend the period of time to resolution. Defense counsel preserved the issue and proceeded to trial as expeditiously as possible.

22

Id. at 210. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Tramel's claim does not have merit because counsel's failure to seek a writ of prohibition did not prejudice the defense. The question of whether a Stand Your Ground defense was available to Tramel was properly decided by the trial court. See Dennis v. State, 51 So. 3d 456, 464 (Fla. 2010). The court considered and weighed all of the evidence and the testimony of the witnesses. Doc. 7-1 at 437-39. Ultimately, the court concluded Tramel had not

demonstrated his entitlement to immunity by a preponderance of the evidence and denied the motion to dismiss. Doc. 7-1 at 439.

The record reflects that the evidence supported the court's denial of the defense's motion. At the pretrial immunity hearing, the defense presented Tramel as a witness. Tramel testified he and Jonathan Key (Key), the victim, engaged in a verbal altercation at the burial of Tramel's brother, Enoch. Doc. 7-1 at 231. Key had a knife by his side. Id. A crowd of people came over to them, and Key started walking towards Tramel. Id. Tramel pushed him. Id. He testified Key then raised his hand, as if to punch Tramel, so Tramel punched him. Id. at 232.  Tramel walked backwards, and Key tackled him by the legs. Id. at 233. Key's brother, Malaki Stills, and his cousin then ran over to the pair and began hitting Tramel. Id. Tramel ultimately threw Key off balance and began walking to his vehicle. Id. at 234. However, Stills and Key continued to pursue him, so Tramel grabbed a knife inside his vehicle. Id. at 234-35. Tramel testified he put the knife in the back of his pants and told Stills to leave him alone. Id. at 235. Stills backed away, but Key "c[ame] out of nowhere" and punched Tramel. Id. at 236. Key tackled Tramel and attempted to reach for the knife. Id. Tramel testified he then took the knife out of his pants and "h[e]ld[] it by [Key's] face." Id. at 236-37. Key then ran away. Id. at 237. Tramel testified

he did not stab Key, and he "could only speculate" as to how Key sustained injuries. Id. at 238. Tramel sustained a cut to his knee. Id. at 236, 239.

The State called multiple eyewitnesses from the burial. Angelina Key (Angelina), Key's sister, testified she saw Tramel and her brother together at the burial. Id. at 313. She heard her brother say, "I'm not going to do this out here, I'm not going to fight you." Id. Tramel then shoved Key twice and punched him. Id. at 314. Angelina observed Key lunge towards Tramel's legs to "tackle him down." Id. Once bystanders broke up the initial altercation, she noticed Tramel had a small knife. Id. at 315-16. Tramel went to his vehicle and returned, walking towards Angelina's other brother, Stills, with his hand behind his back. Id. at 317-18. Stills put his hands in the air and walked backwards while Tramel walked towards him. Id. at 318. Angelina testified she then observed Key and Tramel engage in another altercation. Id. at 319. Tramel and Key were facing each other, and Tramel had one hand on Key's shoulder. Id. at 319-20. Tramel stabbed Key with his other hand. Id. at 320. Key slumped over and backed away from Tramel. Id. at 321. Angelina testified Tramel had a large knife. Id. She further testified that she never saw Key with a weapon, and she did not observe Key run up to Tramel's vehicle. Id. at 325.

Eugene Lusco, the funeral director, testified he witnessed the initial altercation between Tramel and a "smaller guy," Key. Id. at 342-43. Both men "[threw] punches at each other and start[ed] rolling over the ground. Id. at 343. Bystanders stopped the fight, and Tramel moved quickly to his vehicle. Id. at 343-44. No one pursued Tramel. Id. at 344. Tramel came out of the vehicle with an object that appeared to be a firearm. Id. at 345-46. Lusco testified Tramel held his hand behind his back, but then he raised his hand up as he moved towards Key. Id. at 346-47. At that time, Lusco saw Tramel had a knife, not a firearm. Id. at 346. Key tried to walk away from Tramel, but Tramel ultimately cornered Key. Id. at 348. "[T]hey got into an altercation, and somehow it appeared that [Tramel] had wrapped his arms around [Key]." Id. Tramel then stabbed Key approximately three times. Id. at 349. Lusco testified Key did not have a weapon. Id. at 348, 359.

Karen Beere, the deceased's girlfriend, testified during the initial altercation, she saw Tramel punch Key. Id. at 370. Tramel and Key then "locked together" until bystanders separated them. Id. at 370-71. She saw Tramel had a pocketknife. Id. at 371. Tramel then jogged back to his vehicle, where he put something in the back of his pants. Id. at 372. When he returned, Beere saw Tramel had a knife. Id. She did not witness how the second

altercation began; however, she did see Key running across the cemetery and falling to the ground. Id. at 373. Key did not have a weapon. Id. at 374.

Key also testified to his version of the events. Id. at 375-422. Before the burial, Tramel approached Key to help him find Enoch's murderer. Id. at 378. Key initially agreed to help Tramel but stopped answering Tramel's telephone calls. Id. at 378-79. He testified that, at the burial, Tramel confronted him, saying "You don't understand it is what I actually do." Id. at 383. Tramel pushed him. Id. Key put his hands in the air, and stated " Man, I ain't trying to fight you." Id. Tramel again pushed him and reached for Key's jacket. Id. at 384, Key showed Tramel he did not have a weapon, but Tramel proceeded to punch Key in the jaw. Id. at 384. Key tried to tackle Tramel. Id. Bystanders eventually separated the two men. Id. at 385. While he was "trying to gather [him]self," Key saw Tramel walking towards Stills with a knife. Id. Key walked over to them and pushed Tramel to get him away from Stills. Id. Key and Tramel began to fight, and by that time, Key thought Tramel had dropped the knife. Id. at 387-88. Key tried to grab Tramel by the waist to tackle him, but he could not get any leverage. Id. at 388. Key backed away, and Tramel stabbed him in the stomach and in the side. Id. at 388-89.  Key testified he did not have a weapon. Id. at 389.

27

Based on the testimony of the witnesses at the immunity hearing, no reasonable probability exists that the appellate court would have granted a writ of prohibition. The eyewitnesses contradicted Tramel's version of events. Moreover, the single disinterested witness, Lusco, testified to a series of altercations in which Tramel was the initial aggressor and Tramel could have no reasonable belief that the force he used was necessary to prevent imminent death or great bodily harm. Accordingly, Tramel is not entitled to relief on ground three.

## D. Ground Four

As ground four, Tramel contends the postconviction court erred when it refused to retroactively apply a change in law to his case, thereby denying him a "new" Stand Your Ground hearing. Petition at 15. According to Tramel, the Florida Legislature amended Stand Your Ground to shift the burden of proof to the State while his case was pending on direct appeal.[11] Id. at 16. Tramel argues the change in law should have applied retroactively to his case. Id.

---

[11] In Bretherick v. State, 170 So. 3d 766, 768 (Fla. 2015), the Florida Supreme Court determined that "the defendant bears the burden of proof, by a preponderance of the evidence, to demonstrate entitlement to Stand Your Ground immunity at the pretrial evidentiary hearing." However, in 2017, the Florida Legislature adopted the dissent in Bretherick, and amended Florida Statutes section 776.032(4) to provide that "the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution."

Tramel raised a substantially similar claim in state court as ground four of his second amended Rule 3.850 Motion. Doc. 7-22 at 149-50. In denying relief, the circuit court stated:

> Defendant claims the change of law in Stand Your Ground should have applied retroactively. This claim is not cognizable in the instant Motion.

Id. at 210. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Tramel's claim is without merit. The Florida Supreme Court has determined that the statutory amendment shifting the burden of

proof to the State constitutes a procedural change in the law and does not apply retroactively. Love v. State, 286 So. 3d 177, 184 (Fla. 2019). Instead, the statutory amendment applies "to those immunity hearings, including in pending cases, that take place on or after the statute's effective date," June 9, 2017. Id. at 188; see also Laws 2017, c. 2017-72, § 1, eff. June 9, 2017. Here, the trial court held Tramel's Stand Your Ground hearing on January 24, 2013. Doc. 7-1 at 206. Therefore, the statutory amendment does not entitle him to a new hearing. See Washington v. State, 296 So. 3d 567, 568 (Fla. 1st DCA 2020) (holding that defendant was not entitled to a new immunity hearing where his hearing occurred before the statutory amendment's effective date). Accordingly, Tramel is not entitled to habeas relief on ground four.[12]

## E. Ground Five

Next, Tramel argues counsel was ineffective when he made an insufficient motion for judgment of acquittal and an inadequate motion for new trial. Petition at 17-18. He asserts counsel should have argued that the State

---

[12] To the extent Tramel claims the postconviction court erred when it denied ground four of his second amended Rule 3.850 Motion, his claim is not cognizable in a petition for writ of habeas corpus. See Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004) (noting that alleged errors in state postconviction proceedings are not cognizable in a federal habeas proceeding).

did not offer any evidence to rebut Tramel's claim of self-defense. Id. at 17.
According to Tramel, the State did not present any evidence "that showed [he]
was angry at Key, sought him out, then stabbed Key for no reason at all." Id.

Tramel raised a similar claim in state court as ground five of his second
amended Rule 3.850 Motion. Doc. 7-22 at 150-54. In denying relief, the circuit
court explained in pertinent part:

> Defendant claims counsel was ineffective for failing to
> argue the Motion for Judgment of Acquittal
> sufficiently. To be entitled to relief on such a claim,
> Defendant must show that he "may very well have
> prevailed on a more artfully presented motion." White
> v. State, 977 So. 2d 680, 681 (Fla. 1st DCA 2008).
> "Where there is no showing that a motion for judgment
> of acquittal had a likelihood of success, a movant has
> not presented a facially sufficient claim of
> ineffectiveness of counsel." Neal v. State, 854 So. 2d
> 666, 670 (Fla. 2d DCA 2003) (citation omitted).
> Additionally, counsel cannot be deemed ineffective for
> failing to move for a judgment of acquittal where there
> is sufficient evidence to support the defendant's
> convictions and the argument would have been
> meritless. Ferrell v. State, 29 So. 3d 959, 976 (Fla.
> 2010) (citing Mungin v. State, 932 So. 2d 986, 997 (Fla.
> 2006)).

> The Florida Supreme Court has said the following in
> reference to motions for judgment of acquittal:

>> [a] defendant, in moving for a judgment of
>> acquittal, admits not only the facts stated
>> in the evidence adduced, but also admits
>> every conclusion favorable to the adverse

party that a jury might fairly and
reasonably infer from the evidence. The
courts should not grant a motion for
judgment of acquittal unless the evidence
is such that no view which the jury may
lawfully take of it favorable to the opposite
party can be sustained under the law.
Where there is room for a difference of
opinion between reasonable men as to the
proof or facts from which an ultimate fact
is sought to be established, or where there
is room for such differences as to the
inferences which might be drawn from
conceded facts, the Court should submit
the case to the jury for their finding, as it
is their conclusion, in such cases, that
should prevail and not primarily the views
of the judge. The credibility and probative
force of conflicting testimony should not be
determined on a motion for judgment of
acquittal.

Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974).

All the records attached as well as the record of the
Motion for Judgment of Acquittal show there was no
basis to grant said Motion. Counsel cannot be held
ineffective for failing to raise meritless argument or
motion. See Campbell v. State, 139 So. 3d 490, 498
(Fla. 2d DCA 2014).

Id. at 211 (record citation omitted). The First DCA per curiam affirmed the

circuit court's denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the

Court will address the claim in accordance with the deferential standard for

32

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Tramel is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Tramel's claim does not have merit. The record demonstrates counsel argued in his renewed motion for judgment of acquittal that "the use of force . . . was justified based on the evidence." Doc. 7-3 at 503. In his amended motion for new trial, counsel further argued the trial court erred when it denied the defense's motion for judgment of acquittal and renewed motion for judgment of acquittal. Doc. 7-1 at 165-66. Therefore, counsel raised the issue in both motions.

Nevertheless, if counsel made an insufficient motion for judgment of acquittal or motion for new trial, the motions would not have succeeded based on the proposed arguments. Tramel initially argues the State failed to present any evidence to establish his motive for stabbing Key. However, Key testified

Tramel sought to enlist him to assist in investigating Enoch's murder. Doc. 7-3 at 251. Key noted Tramel "was real interested in trying to make something happen in a revenge like manner for his brother." Id. Key agreed to help Tramel; but, after considering the issue, decided that he did not want to help and ignored Tramel's telephone calls. Id. at 261. Key testified that Tramel confronted him at the funeral and asked him why he had not answered Tramel's calls. Id. at 264. Key told Tramel that he did not want to be involved, and Tramel responded, "[Y]ou don't know what it is I do . . . You must really don't understand what I actually do." Id. Key testified Tramel then pushed him. Id. Given this testimony, the State presented sufficient evidence of Tramel's motive to submit the issue to the jury and to sustain the jury's findings.

Additionally, the State presented evidence to rebut Tramel's self-defense claim. Multiple eyewitnesses who attended the funeral testified that they did not see Key with a knife or firearm during the altercations. Id. at 194, 236, 318. Also, Dr. Albert Simpson, who officiated the burial service, testified he did not witness anyone aggressively approach Tramel. Id. at 236. And, Latarsha Turner, Key's fiancé, stated she did not witness anyone attack Tramel. Id. at 218. Given the record evidence, the trial court would not have granted an

34

artfully drafted motion for judgment acquittal or motion for a new trial on the proposed basis. Therefore, Tramel is not entitled to federal habeas relief on ground five.

## F. Ground Six

In ground six, Tramel argues counsel was ineffective when he did not investigate and call witnesses, did not impeach State witnesses, and failed to suppress evidence. Petition at 20. Tramel asserts he identified witnesses for counsel to depose and identified deposition testimony for impeachment purposes, but counsel did not depose or call those witnesses, and did not properly impeach witnesses. Id. According to Tramel, counsel also should have suppressed Tramel's motive for the attack, as proposed by the State. Id.

Tramel raised a substantially similar claim in state court as ground six of his second amended Rule 3.850 Motion. Doc. 7-22 at 154-56. In denying relief, the circuit court explained in pertinent part:

> Defendant claims his counsel did not investigate witnesses; impeach witnesses; or suppress evidence. It is unclear what suppression Motion the Defendant wanted filed but "where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious." Zakrzewski v. State, 866 So. 2d 688, 694 (Fla. 2003) (citation omitted). See Johnston v. State, 63 So. 3d 730, 740 (Fla. 2011) (stating counsel cannot

35

be deemed ineffective when motion to suppress would have been meritless).

As to the failure to investigate claim, actually the motion itself indicates his counsel contacted all his witnesses but did not depose them. There is no basis for defense counsel to depose his own witnesses. There does not appear to be a claim for failure to call a witness, defendant must allege that "those witnesses would in fact have been available to testify at trial." Nelson v. State, 875 So. 2d 579, 584 (Fla. 2004); see Nelson v. State, 73 So. 3d 77, 88 (Fla. 2011) (concluding witness availability integral to establish prejudice). "[T]he failure to call witnesses can constitute ineffective assistance of counsel if the witnesses may have been able to cast doubt on the defendant's guilt, and the defendant states in his motion the witnesses; names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." Beasley v. State, 18 So. 3d 473, 493 (Fla. 2009); see Nelson, 875 So. 2d at 583. Finally, the records show[] counsel did in fact impeach Mr. Key, the witness the Defendant claimed lied.

Id. at 212 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve

36

an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Tramel's claim is without merit. The record demonstrates Tramel insisted on proceeding with a trial despite the trial court and counsel advising him that the defense had not completed depositions. The trial court initially scheduled jury selection for January 22, 2013. At that time, the trial court conducted a colloquy with Tramel:

> THE COURT: It's my intent to pick your jury this afternoon at 1:00 o'clock and try the case Thursday and Friday of this week.
>
> Last week when we were all together, there was some concern about – concerns about an issue. There was some question about the status of discovery, and I just want to make sure that the record is clear that you're wanting to go to trial this week regardless of the status of preparation; is that correct?
>
> THE DEFENDANT: That's correct, Your Honor.
>
> THE COURT: Okay. Mr. Golik, do you need to be heard on that?
>
> MR. GOLIK: No, Your Honor. I discussed with my client that the witnesses were not deposed, the risks associated with going forward without them, and we feel that we are ready to go to trial.

THE COURT: And, Mr. Tramel, just so that I'm clear, you want to do that because you believe it's in your best interest?

THE DEFENDANT: Well, I do, Your Honor, because—and I'd also like to file a motion to stand your ground.

. . . .

THE COURT: Well, he talked about that on the record when we were here before, and presumably he's talked about that with you in private.

And I just want to make sure that you're satisfied with the status of the case and want to go forward –

THE DEFENDANT: Actually –

THE COURT: –because you believe that to be in your best interest in spite of the things I've been told, which are that discovery may not be complete. Do you understand that, sir?

THE DEFENDANT: I do understand that.

THE COURT: Okay. And you want to go forward with trial; is that correct?

THE DEFENDANT: I do want to go to trial.

Doc. 7-2 at 17-19. The trial court then continued jury selection, so counsel could file a motion to dismiss pursuant to Stand Your Ground. An immunity hearing took place on January 24, 2013, and jury selection began on March 11, 2013. Docs. 7-1 at 206; 7-3 at 5. Before jury selection, the parties again discussed that the defense had not deposed all witnesses; however, Tramel still wanted to proceed with a trial. Doc. 7-3 at 7-11. In the months before trial, Tramel

prioritized proceeding with a trial in an expeditious manner over obtaining additional discovery. Therefore, it was not unreasonable for counsel to proceed with a trial despite the status of discovery.

Tramel also argues counsel did not sufficiently impeach witnesses, specifically Key. However, the record reflects that during trial, counsel extensively cross-examined Key, id. at 282-308, and impeached him about his statements to Tramel before the altercation, id. at 290-94. Moreover, insofar as Tramel contends counsel should have filed a motion to suppress the proposed motive for his actions, the record refutes his claim. Counsel objected to Key's testimony about Tramel's motive during trial Id. at 252-53. The trial court allowed the State to proffer the testimony and ultimately overruled counsel's objection. Id. at 254-59. Nevertheless, counsel succeeded in limiting the testimony so the jury would not hear that Tramel asked Key to obtain weapons to exact revenge on Enoch's murderer. Id. at 259.

Based on the above, Tramel has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming deficient performance by defense counsel, Tramel has not shown any resulting prejudice. Thus, his ineffectiveness claim is without merit since he has shown neither deficient

performance nor resulting prejudice. Accordingly, Tramel is not entitled to federal habeas relief on ground six.

## G. Ground Seven

In ground seven, Tramel asserts counsel was ineffective when he did not object to the amended information. Petition at 22. According to Tramel, the amended information violated double jeopardy because the State charged him with two offenses from a single episode. Id. at 23. Additionally, he claims that, because the State filed the amended information after the expiration of speedy trial, the trial court was divested of jurisdiction. Id.

Tramel raised a similar claim in state court as ground seven of his second amended Rule 3.850 Motion. Doc. 7-22 at 156-58. In denying relief, the circuit court explained:

> Defendant claims his counsel did not object to [the] amended information on double jeopardy grounds. Counsel cannot be held ineffective for failing to raise a meritless argument or motion. See Campbell v. State, 139 So. 3d 490, 498 (Fla. 2d DCA 2014).

Id. at 212. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Tramel's ineffectiveness claim is without merit. The Eleventh Circuit has stated:

> Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." United States v. Smith, 532 F.3d 1125, 1128 (11th Cir. 2008) (quoting Williams v. Singletary, 78 F.3d 1510, 1512 (11th Cir. 1996)). If the legislative intent is unclear, we apply the "same elements" test set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We have recognized that the Blockburger test "is one of statutory interpretation in which we examine the elements of each offense to determine whether Congress intended to authorize cumulative punishments." United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008). Under that test, two offenses are different for double jeopardy purposes "if each 'requires proof of an additional fact which the other does not.'" Smith, 532

> F.3d at 1128 (quoting <u>Cole v. United States Dep't of Agric.</u>, 133 F.3d 803, 805 (11th Cir. 1998)). In other words, "if an offense requires proof of an element that the other offense does not, we need look no further in determining that the prosecution of both offenses does not offend the Fifth Amendment." <u>United States v. Hassoun</u>, 476 F.3d 1181, 1186 (11th Cir. 2007).

<u>United States v. Davis</u>, 854 F.3d 1276, 1286 (11th Cir. 2017). Convictions for attempted second-degree murder and aggravated battery with a deadly weapon do not violate double jeopardy because attempted second-degree murder requires proof of an element that aggravated battery with a deadly weapon does not. <u>See</u> <u>State v. Florida</u>, 894 So. 2d 941, 949 (Fla. 2005), <u>receded from on other grounds by</u> <u>Valdes v. State</u>, 3 So. 3d 1067, 1077 (Fla. 2009); <u>Schirmer v. State</u>, 837 So. 2d 587, 589 (Fla. 5th DCA 2003) ("[A]ttempted second degree murder requires proof of an act which could have resulted in death–an element not required for aggravated battery.").

Tramel also argues that the amended information was filed after the expiration of speedy trial. As noted by the Court in ground two, the defense's motion for continuance waived speedy trial. <u>Stewart v. State</u>, 491 So. 2d 271, 272 (Fla. 1986) ("As the district court correctly stated, when a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his

speedy trial right as to all charges which emanate from the same criminal episode."). Nevertheless, any amendment to the information did not prejudice the defense. Counts One and Two arose from the same series of events and involved the same victim. Doc. 7-1 at 57. Moreover, the State filed an amended information on January 17, 2013. Id. Tramel did not proceed to a trial until March 11, 2013. Doc. 7-3 at 5. Accordingly, the State's filing of the amended information would not have prejudiced the defense's preparation. Therefore, Tramel is not entitled to federal habeas relief on ground seven.

## H. Ground Eight

Next, Tramel asserts the State and counsel violated his right to a fair trial because he did not have a representative jury. Petition at 24. According to Tramel, "the [S]tate systematically struck and otherwise excluded each African-American ven[ire] member despite their making up 1/3 of the jury pool." Id. Tramel contends counsel assisted the State by striking "the one (1) Black juror who made the jury." Id.

Tramel raised a substantially similar claim in state court as ground eight of his second amended Rule 3.850 Motion. Doc. 7-22 at 158-59. In denying relief, the circuit court stated in pertinent part:

> Defendant claims his counsel did not [e]nsure [the] jury had members of his race. The Defendant was

> present during jury selection and it was not until after all the jurors were selected that he indicated any displeasure. This was brought to the court's attention by his counsel but nothing could be done at that point. The Defendant at some point argues [the] trial court committed error when he walked outside. The Defendant is apparently referring to when the court stepped outside to bring the jurors in[]to the courtroom. There is not trial court error and certainly no basis for counsel to object to such an action.

Id. at 212-13 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Tramel's claim does not have merit. He asserts "the court's forced selection process assisted the [S]tate" in systematically excluding

44

African American jurors. Petition at 24. However, the record shows otherwise. After voir dire, the trial court explained the jury selection process:

> If you have no challenges, the first six would be your jury. And as a person is excluded, whether it be by cause or peremptory challenge, the succeeding juror would take that jurors place in numerical order.

Doc. 7-3 at 118. The record demonstrates the trial court simply used a selection procedure based on juror numbers. Tramel fails to explain how such a procedure caused or contributed to the exclusion of African American jurors. Therefore, Tramel is not entitled to relief as to this claim.

Further, the State did not discriminately and unreasonably strike jurors. Before counsel struck Juror 12,[13] the State had only exercised one peremptory challenge and three cause challenges. The State struck Jurors 4, 9, and 10 for cause. Juror 4 indicated since his friend was a convicted felon, he did not think that he could act as a fair and impartial juror. Id. at 68. He even expressed his opinion that "the whole judicial system is – like, no offense – going to c**p." Id. Juror 9 stated that he had "an overall negative feeling" towards the State

---

[13] Tramel alleges Juror 12 was "the one (1) Black juror who made the jury." Petition at 24. In his Reply, Tramel further alleges Jurors "9, 12, 15, 16, 17, 20, 25, 26, 27, 29, 30, and 35 were African-American." Reply at 11. The record shows Jurors 1, 2, 3, 6, 7, and 13, were selected as jurors, and Juror 14 was selected as an alternate juror. Doc. 7-3 at 123.

Attorney's Office and that it would prevent him from acting as a fair and impartial juror in the case. Id. at 87. The State challenged Juror 10 because "she indicate[d] she would be overly sensitive, [and] [didn't] feel like she would be capable of handling the proceedings." Id. at 120. Juror 10 also expressed her belief that she could not act as a fair and impartial juror. Id. at 90. Based on the record of voir dire, the Court cannot conclude the State exercised challenges in a discriminatory manner.

Moreover, although counsel struck the only African American juror likely to have made it on the jury, the record demonstrates counsel had legitimate reasons for striking Juror 12. Juror 12 admitted to having health problems, and noted:

> But this time, I think that – I don't think I would be able to withstand – and be listening to what this defense says and whatnot if I have to have pain. And I've got pain pills now. I would love to, but I don't think so.

Doc. 7-3 at 96 (emphasis added). The Court cannot conclude counsel was deficient for striking a juror who indicated he could not listen to the defense's arguments at trial. Accordingly, Tramel is not entitled to federal habeas relief as to the claim raised in ground eight.

# I. Ground Nine

In ground nine, Tramel argues counsel was ineffective when he "failed to [e]nsure relevant jury instructions consistent with the law and evidence at trial." Petition at 26. According to Tramel, the trial court gave erroneous instructions to the jury on Stand Your Ground, attempted manslaughter, and justifiable homicide. Id. Tramel raised a substantially similar claim in state court as ground nine of his second amended Rule 3.850 Motion. Doc. 7-22 at 160-61. In denying relief, the circuit court explained:

> Defendant claims his counsel did not [e]nsure he had the relevant jury instruction. The court notes, his jury instructions were addressed on direct appeal. Further, the transcript and record provided establish that the Defendant used "Deadly force" and that is the instruction that was given. He would not have been entitled to an instruction on non-deadly force.

Id. at 213 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

The First District Court of Appeal has determined:

> When the evidence fails to establish as a matter of law whether the type of force used was deadly or non-deadly, the defendant is entitled to instructions on the justifiable use of both types of force. Williams v. State, 727 So. 2d 1062 (Fla. 4th DCA 1999); Caruthers v. State, 721 So. 2d 371 (Fla. 2d DCA 1998). The only type of force that has been determined to be deadly as

47

> a matter of a law is discharging a firearm. <u>Williams</u>,
> 727 So. 2d at 1063.

<u>Mathis v. State</u>, 863 So. 2d 464, 465 (Fla. 1st DCA 2004). Tramel did not discharge a firearm in this case; therefore, Florida law required the trial court to instruct the jury on the justifiable use of nondeadly force. Moreover, although the postconviction court stated the jury instructions were addressed on direct appeal, the First DCA explicitly affirmed Tramel's convictions and sentences without prejudice to his right to seek postconviction relief. Doc. 7-12.

In light of the fact that the postconviction court's denial of relief rested on finding that Tramel was not entitled to a nondeadly force instruction and because the First DCA did not provide a written opinion, the Court presumes the First DCA affirmed the denial of relief based on the postconviction court's finding. <u>Wilson</u>, 138 S. Ct. at 1192. However, since Tramel would have been entitled to such an instruction, it does not appear as if deference is owed to this adjudication. Nevertheless, under a <u>de novo</u> review, Tramel is not entitled to relief because he cannot demonstrate prejudice. <u>See</u> <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in <u>de novo</u> review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on <u>de novo</u> review.").

48

The Court concludes the failure to request a jury instruction on the justifiable use of nondeadly force did not contribute to Tramel's convictions or sentences. Based on the evidence presented at trial, Tramel would not have prevailed even if the trial court had issued the nondeadly force instruction. At trial, Key described his wounds from his second altercation with Tramel. He received three stab wounds to his shoulder, one wound to his lower back, and a nine-inch wound across his stomach. Doc. 7-3 at 277-78. He testified that there was blood everywhere and remembered applying pressure to the wounds as his sister and girlfriend drove him to the hospital. Id. at 273-74. Angelina, Key's sister, also testified to driving with Key to the hospital after the incident, and noted the vehicle's back seat was "full of blood." Id. at 193. Lusco, a disinterested witness,[14] testified he witnessed Tramel stab Key during the pair's second altercation:

> Well, what I saw was that he hooked him around and turned him around and with his other hand he start[ed] stabbing him with the knife and every time he thrust the knife it look like it raised him up off the ground about a foot or so. I mean it was brutal and he did it about two or three times.

---

[14] Lusco was the funeral director. Doc. 7-3 at 325. He testified he was not related to the parties, and he did not know them. Id. at 329.

49

Id. at 332 (emphasis added). The State also showed the jury images of the vehicle's back seat, as well as graphic images of Key's wounds. Doc. 7-1 at 104-121, 128.

The jury's findings also support the conclusion that Tramel would not have prevailed even if the trial court issued a nondeadly force instruction. Florida's standard jury instructions defines "nondeadly force" as "force not likely to cause death or great bodily harm." Fla. Std. Jury Instr. (Crim.) 3.6(g). However, after hearing all of the evidence, the jury found Tramel guilty of aggravated battery with a special finding that Tramel carried, displayed, or used a deadly weapon during the commission of the offense. Id. at 160. The jury instructions defined "deadly weapon" as one that is "used or threatened to be used in a way likely to produce death or great bodily harm."[15] Id. at 145. The jury also found Tramel guilty of attempted second-degree murder, which required the jury to find Tramel engaged in an act that "was imminently dangerous to another and demonstrating a depraved mind without regard to human life." Id. at 140. Such an act must be one that "a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury

---

[15] Jurors are presumed to follow jury instructions. United States v. Calderon, 127 F.3d 1314, 1334 (11th Cir. 1997).

to another." Id. Based on the evidence and the jury's findings, the Court cannot conclude the failure to instruct the jury on the use of nondeadly force prejudiced the defense. Accordingly, Tramel was not prejudiced by counsel's failure to request the instruction, and he is not entitled to relief.

To the extent Tramel also challenges, as confusing or contradictory, the instructions on the duty to retreat pursuant to Stand Your Ground, his claim does not have merit. The Florida Supreme Court determined the instructions used in the instant case "accurately and correctly" explain the duty to retreat "with regard to the factually complex situations where the jury must unwind the facts to determine who was the initial aggressor." Floyd, 186 So. 3d at 1020-21. Accordingly, even assuming counsel should have objected to the instructions, his failure to object did not prejudice the defense.

If Tramel challenges the placement of the justifiable use of deadly force instructions after the jury instructions for Counts One and Two, the record shows counsel specifically asked the trial court to place the instructions after each count so the jury would understand they applied to all charges. Doc. 7-3 at 429-30. Accordingly, the Court cannot find counsel was ineffective for addressing Tramel's concerns.

51

To the extent Tramel contends counsel was ineffective when he did not object to the jury instruction on attempted voluntary manslaughter because it contains "an element of intent to kill," his claim is due to be denied. Petition at 26. The trial court provided the following instruction:

> In order to convict of Attempted Voluntary Manslaughter it is not necessary for the State to prove that the Defendant had a premeditated intent to cause death.

Doc. 7-1 at 142. The trial court used the standard instruction for attempted voluntary manslaughter, which specifically provides that the State need not demonstrate intent to kill. Fla. Std. Jury Instr. (Crim.) 6.6. As such, counsel had no basis to object to the instruction, and Tramel is not entitled to federal habeas relief on ground nine.

## J. Ground Ten

Next, Tramel contends counsel was ineffective when he did not object to Tramel's conviction for "depraved mind attempted murder." Petition at 28. According to Tramel, the amended information did not allege he acted with a depraved mind, and the evidence did not support such a conviction. Id. at 28-29.

Tramel raised a substantially similar claim in state court as ground ten of his second amended Rule 3.850 Motion. Doc. 7-22 at 161-62. In denying relief, the circuit court stated in pertinent part:

> Defendant claims his counsel did not challenge the fact that he was convicted of a crime not charged in the Information. He further argues counsel should have objected to the lesser included offense. The record attached rebuts this allegation. Further, the Defendant benefitted from the inclusion of a lesser offense.
>
> In essence, at trial the Defendant felt things were not going as he wanted and he asked for a Nelson[16] hearing. He raised issues of concern which were addressed by the Court and Defense counsel and the State responded. The main concern was he felt he had not been returned all the copies of his depositions and he wanted the testimony of Mr. Key impeached as to his hospital stay. The State correctly argued since he was not charged with great bodily harm, that testimony would only have been relevant for impeachment purposes. The issue was addressed and counsel admitted he relied on the State's subpoena. Ultimately the Defendant changed his mind about not testifying and decided to testify and was able to present his testimony in addition[] to another witnesses testimony as to his version of event[s].
>
> Ultimately, the Defendant has failed to show that there is a reasonable probability that had counsel acted as the Defendant suggests he should have that the outcome would have been any different. Accordingly, this Court finds the Defendant has not

---

[16] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

> established error on the part of counsel that prejudiced
> his case. <u>Strickland</u>, 446 U.S. 668.

<u>Id.</u> at 213 (record citation omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-24 at 3.

To the extent that the First DCA denied these claims on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Tramel is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudications of these claims are not entitled to deference, Tramel's claim does not have merit. Attempted second-degree murder constitutes a category one necessarily lesser included offense of attempted first-degree murder. Fla. Std. Jury Instr. (Crim.) 6.2. "Necessarily lesser included offenses are those offenses in which the statutory elements of the lesser included offense are always subsumed within those of the charged offense." <u>Sanders v. State</u>, 944 So. 2d 203, 206 (Fla. 2006). The

trial judge must instruct the jury on a necessarily lesser included offense. State v. Wimberly, 498 So. 2d 929, 932 (Fla. 1986). Here, counsel was not deficient for not objecting to the lesser included offense. The trial court was required to instruct the jury on the lesser included offense, and if counsel had objected, the trial court would have overruled such an objection. Counsel cannot be ineffective for failing to make a meritless objection. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument). Moreover, after a review of the record evidence, the Court finds the State presented sufficient evidence to support a finding that Tramel committed attempted second-degree murder. Accordingly, Tramel is not entitled to federal habeas relief on ground ten.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Tramel seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Tramel "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting

55

<u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     Tramel's Motion of Intent to Continue Pursuing Case (Doc. 24) is **DENIED as moot**.

3.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

4.     If Tramel appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

5.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of July, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 5/26
C:     Michael Tramel
         Counsel of record